IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 10, 2024

## WILLIAM ROLANDUS KEEL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2013-A-673     Angelita Blackshear Dalton, Judge**

—————————————————————

**No. M2024-00368-CCA-R3-ECN**

—————————————————————

Petitioner, William Rolandus Keel, filed a pro se "Motion to Reopen Post Conviction Petition in Conjunction with Writ of Error Coram Nobis" ("the Petition").[1] The trial court found that the Coram Nobis Petition, on its face, failed "to establish that there is newly discovered evidence that would give rise to coram nobis relief" and summarily dismissed the Coram Nobis Petition. Discerning no reversible error, we affirm the summary dismissal of the Coram Nobis Petition. Because Petitioner failed to comply with the statutory requirements for seeking appellate review of the denial of the Motion to Re-open, we lack jurisdiction to consider the Motion. Tenn. Code Ann. § 40-30-117(c).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JOHN W. CAMPBELL, SR., JJ., joined.

William Rolandus Keel, Whiteville, Tennessee, pro se.

Jonathan Skrmetti, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Glenn R. Funk, District Attorney General; and Janice Norman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Davidson County Grand Jury indicted Petitioner with two counts of rape of a child for offenses committed against his then stepdaughter ("the victim"). *State v. Keel*, No. M2016-00354-CCA-R3-CD, 2017 WL 111312, at *1 (Tenn. Crim. App. Jan. 11,

---

[1] When referring only to the motion to reopen the post-conviction proceeding, we will use "the Motion to Reopen." When referring only to error coram nobis relief, we will use "the Coram Nobis Petition." We will use "the Petition" to refer to both.

2017), *perm. app. denied* (Tenn. Apr. 13, 2017). The first trial in March 2015 resulted in a hung jury and a mistrial. *Id.* In the second trial in December 2015, Petitioner was convicted of two counts of rape of a child and sentenced to thirty years at one hundred percent service on each count. *Id.* at *2. The trial court aligned the sentences consecutively for an effective term of sixty years' incarceration. *Id.*

## Direct Appeal

On direct appeal, in relevant part, Petitioner claimed that the trial court erred by denying his motion to compel production of the victim's Department of Children's Service ("DCS") records "from March 2012 to current[.]" *Id.* at *3. Petitioner argued that "because he already had possession of the victim's DCS records from 2008 until early 2012, he had 'a good faith basis to believe that there would be additional statements in the records from March 2012 to current that would be material to [his] defense.'" *Id.* The trial court, following an *in camera* review of the records, had denied Petitioner's request, finding that "the records contain no exculpatory or material information that [Petitioner] is entitled to have." *Id.* This court reviewed the records and determined that "[b]ecause the records contained no information that would likely have changed the outcome" of Petitioner's trial, the trial court did not err in denying Petitioner's request to review the records. *Id.* This court also determined that no violation of *Brady v. Maryland*, 373 U.S. 83 (1963), occurred and affirmed the judgments of conviction. *Id.* The Tennessee Supreme Court denied further review. *Id.*

## First Petition for Post-Conviction Relief

Petitioner timely filed a *pro se* post-conviction relief petition, which was later amended through appointed counsel. *Keel v. State*, No. M2019-00612-CCA-R3-PC, 2020 WL 5407489 at *1 (Tenn. Crim. App. Sept. 9, 2020), *no perm. app. filed*. Following a trifurcated evidentiary hearing, the post-conviction court addressed several motions filed by Petitioner, including a pro se "Motion to Treat New Evidence in Post-Conviction as Error Coram Nobis Petition." *Id*. at *5. Petitioner asked the court to consider school records of his children, which he claimed showed that Petitioner and his family lived in Wilson County, not Davidson County, during the time the rapes were alleged to have occurred. The post-conviction court "concluded that the school records were not newly discovered evidence because the Petitioner was aware they existed at the time of the trial and failed to obtain the records at that time" and denied the motion for a writ of error coram nobis. *Id*. The post-conviction court also held that Petitioner had not shown that trial counsel was ineffective and denied post-conviction relief. *Id*. at *6.

- 2 -

Petitioner appealed, claiming that "the post-conviction court denied him a full and fair post-conviction hearing." *Id.* at *1. This court determined that "the post-conviction court correctly disposed of the evidentiary motions, the error coram nobis claim, and the request to recall [c]ounsel." *Id*. at *8. However, after acknowledging "the convoluted course of this petition and the challenges attendant to [tri]furcated hearings," this court determined that Petitioner "was never allowed the opportunity to testify about the reasons the Petitioner believed [c]ounsel was ineffective at trial as it related to the motion for new trial and on appeal." The judgment of the post-conviction court was affirmed in part, reversed in part, and the case was remanded for a hearing to allow the Petitioner to testify concerning the allegations in his petition. *Id.*

### Post-Conviction Hearing Following Remand

During the post-conviction hearing following remand, Petitioner testified that he wanted appellate counsel to raise "in the motion for new trial and on appeal" the trial court's exclusion of a recording of a phone call that Petitioner and the victim's mother placed to the victim. *Keel v. State*, No. M2022-00089-CCA-R3-PC, 2023 WL 3862777, at *5 (Tenn. Crim. App. June 7, 2023), *perm. app. denied* (Tenn. Oct. 13, 2023). Petitioner "stated that he asked the victim during the second trial if her grandmother had told her that she would go to jail if she 'told the police, told the [j]udge or the State or anybody anything different from what they talked about[,]' and the victim 'said yes, on the record.'" Petitioner said that he attempted to introduce at the second trial a recording of the phone call to "back it up[,]" but the trial court sustained the State's objection "because a copy [of the recording] had not been provided to the State in discovery and because it was not a prior inconsistent statement." *Id*. at *6. The post-conviction court found "that trial counsel made an informed decision based on adequate preparation in his determination of which issues to raise on appeal, and, as such, that the content of the recording had 'no bearing on the existence of any fact that is of consequence'" to the determination of trial counsel's effectiveness in his representation of Petitioner. *Id*. at *8. This court affirmed the post-conviction court's denial of relief. *Id*. at *1.

### Current Petition

Petitioner mailed a letter addressed to the Davidson County Criminal Court Clerk, a letter addressed to the trial judge, a pro se "Motion for Consideration of Ex[]Parte Order," an "Ex[]Parte Order," and the Petition, all of which were filed on February 7, 2024. In the letter to the court clerk, Petitioner asked if the clerk "can give the ex[]parte Motion, Order, and letter to [the coram nobis judge] herself without the State receiving a copy; for ex[]parte means without the opposing party's presence." The letter to the coram nobis judge states that "there is no need for to have a hearing" because "the evidence itself is sufficient to vacate [Petitioner's] sentence."

The "Motion for Consideration of Ex[]Parte Order" requests the court to vacate Petitioner's sentence "not only under due process but also for [j]udicial [e]conomy" because "[w]e all know that there is no way a jury would have been unanimous in their decision of guilt if this evidence that was withheld and suppressed by the State had been given to the [c]ourt in it's *in camera* review and [Petitioner] to present before the jury." The motion does not show that it was served on the State.

The Ex Parte Order had two boxes, one for the trial court to check to "[v]acate the Petitioner's case in it's entirety due to the evidence being insufficient to support the conviction" and a second box for the court to check "to [s]et [a]side Petitioners [j]udgments and remand for a New Trial." Understandably, the Ex Parte Order was never executed by the trial court.

In the Petition, Petitioner sought "to reopen post-conviction with incorp[o]rating the Writ of Error Coram Nobis [p]ursuant to [*Nunley v. State*, 552 S.W.3d 800 (Tenn. 2018)]" because the State committed a *Brady* violation. Petitioner claimed that he had "[n]ewly [d]iscovered [e]vidence that the State withheld from the [c]ourt and [Petitioner]." What Petitioner claimed to be newly discovered evidence consisted of three items:

1. Certain of the victim's DCS records, which were attached as "Exhibit AP" to the Petition, and which Petitioner claims the State withheld in violation of *Brady*;

2. A statement "recently" made by the victim's uncle to one of Petitioner's prior attorneys, in which the uncle stated that he knew that the victim's rape allegations against Petitioner were untrue. The uncle claimed that the victim and the victim's grandmother (the uncle's mother) had also falsely accused the victim's uncle of raping the victim. Petitioner claimed that this statement "showed intent for the grandmother to force [the victim] to lie on [Petitioner]." The persistent assertion throughout the Petition is that the victim's grandmother committed perjury at the trial and coerced the victim into lying about Petitioner so that the grandmother could obtain parental rights for the victim. Petitioner claimed that the State violated his due process rights by knowingly using perjured testimony.

3. Nashville Electric System billing records, which Petitioner claimed demonstrated that he and his family lived in Wilson County and that the Davidson County Criminal Court did not have subject matter jurisdiction to try him for the rapes.

**Order Summarily Dismissing Petition**

In its February 20, 2024 Order ("the 2024 Order"), the trial court noted that it was issuing "this order regarding coram nobis relief." The 2024 Order did not specifically address the Motion to Reopen. The court found that "[b]ecause the [Coram Nobis P]etition was filed within one (1) year of the judgment of the trial court becoming final, this [c]ourt finds that the [Coram Nobis P]etition is timely." In the 2024 Order, the court stated:

> In the present case, the Petitioner claims that the State committed a *Brady* violation by withholding what he characterizes as exculpatory evidence. The Petitioner claims that upon requesting records of the victim . . . from [DCS], although the [c]ourt conducted an *in camera* review of the records, the State suppressed some of the records. In addressing the trial court's litigation of issues related to DCS records, the [c]ourt of [c]riminal [a]ppeals noted that, in his motion for the production of the DCS records from March 2012 to current, the Petitioner indicated that he already had records from 2008 through early 2012. [] *Keel*, 2017 WL 111312 [at] *3. Because the Petitioner averred to possession of records from 2008 through early 2012 in his motion for production of records in the trial of this matter, and because the trial court fully litigated matters related to DCS records from March 2012 through current, this [c]ourt finds that the [Coram Nobis P]etition, on its face, fails to demonstrate that the DCS records are newly discovered evidence outside the record that have not been previously litigated. This [c]ourt further finds that the [Coram Nobis P]etition, on its face, fails to demonstrate that the State committed a *Brady* violation. This [c]ourt notes that the records complained of in the [Coram Nobis P]etition were records from 2011, Exhibit AP to the [P]etition, which covers the timeframe of records the Petitioner admitted to having upon the filing of his motion for production of records in the trial court.

> The Petitioner next claims that he is entitled to relief because the State lacked jurisdiction to prosecute the charges against him. To this issue, this [c]ourt finds that the [Coram Nobis P]etition, on its face, fails to show newly discovered evidence that would demonstrate that the State lacked jurisdiction to prosecute the charges against him.

> Finally, the Petitioner claims that he is entitled to relief based on a statement from . . . [the victim's uncle]. The Petitioner asserts that [the victim's uncle] has stated that "[h]e knows [the Petitioner] to be innocent because they, (meaning his mother . . . and [the victim]), accused him of raping [the victim]." First, this [c]ourt finds that the [Coram Nobis P]etition,

- 5 -

on its face, has failed to demonstrate that the statement of [the victim's uncle] is newly discovered evidence to which the Petitioner did not have access in the trial of this matter. Secondly, this [c]ourt finds that the [Coram Nobis P]etition, on its face, fails to demonstrate that statements of [the victim's uncle] regarding allegations against [the victim's uncle] would have been admissible in the trial of this case, thereby resulting in a favorable outcome for the Petitioner. Thirdly, this [c]ourt finds that the [Coram Nobis P]etition, on its face, fails to demonstrate the statement of [the victim's uncle] to be credible.

(footnotes omitted).

Although the trial court summarily dismissed the Petition, the order is specifically limited to the Coram Nobis Petition. Following the summary dismissal of the Petition, Petitioner filed a notice of appeal pursuant to Tennessee Rule of Appellate Procedure 3. Petitioner did not file an application in this court seeking permission to appeal the dismissal of his motion to reopen his post-conviction petition pursuant to Tennessee Code Annotated section 40-30-117(c).

### ANALYSIS

We glean from Petitioner's brief that Petitioner claims that the trial court "committed plain error" or abused its discretion by: (1) concluding that the DCS records in Exhibit AP were not newly discovered evidence; (2) failing to find a *Brady* violation based on the State's withholding DCS records and not providing "the video with audio of both trials"; (3) concluding the victim's uncle's statements were neither newly discovered nor credible evidence; (4) concluding that Petitioner failed to appeal to the supreme court and provide "notice of the writ" to the State; and (5) failing to find that the trial court lacked jurisdiction to try Petitioner.

The State claims that the trial court's summary dismissal of the Petition "had the substantive effect" of denying both the Coram Nobis Petition and the Motion to Reopen. The State also argues that Petitioner failed to "seek permission" from this court to appeal the denial of the Motion to Reopen and therefore this court should limit its review to the denial of the Coram Nobis Petition which is both time-barred and meritless. We agree with the State.

### I. Motion to Reopens

A motion to reopen a post-conviction petition is only available if a petitioner can establish "by clear and convincing evidence that the petitioner is entitled to have the

conviction set aside or the sentence reduced" and the claim: (1) "is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial"; (2) is based upon new scientific evidence that establishes the petitioner is actually innocent; or (3) is based upon a previous sentence that was enhanced due to a previous conviction which was later found to be invalid. Tenn. Code Ann. § 40-30-117(a); *Keen v. State*, 398 S.W.3d 594, 607 (Tenn. 2012). A post-conviction court's denial of a motion to reopen a post-conviction petition "does not afford a petitioner an appeal as of right, *see* Tennessee Rule of Appellate Procedure 3(b), rather, such denial may be challenged on appeal only by the filing of an application for permission to appeal no later than thirty days after the denial by the post-conviction court." *Carter v. State*, No. W2022-00474-CCA-R3-PC, 2022 WL 17547235, at *4 (Tenn. Crim. App. Dec. 9, 2022), *perm. app. denied* (Tenn. Apr. 18, 2023); *see* Tenn. Code Ann. § 40-30-117(c); *see also* Tenn. Sup. Ct. R. 28, § 10(B). However, we may treat a notice of appeal as an application for permission to appeal if the notice of appeal is in substantial compliance with Tennessee Code Annotated § 40-30-117(c). *Graham v. State*, 90 S.W. 3d 687, 691 (Tenn. 2002). To be in substantial compliance, the contents of the notice of appeal must include the date and judgment from which the petitioner seeks review, the issue which the petitioner seeks to raise, and the reasons why the appellate court should grant review." *Id*.

Because Petitioner's notice of appeal did not substantially comply with the application requirement of Tennessee Code Annotated section 40-30-117(c), we lack jurisdiction to consider the trial court's dismissal of the Motion to Reopen. *Carter*, 2022 WL 17547235, at *5; *see Phillips v. State*, No. M2020-00699-CCA-R3-PC, 2021 WL 1592522, at *4 (Tenn. Crim. App. Apr. 23, 2021), *perm. app. denied* (Tenn. Sept. 15, 2021).

## II. Error Coram Nobis

Tennessee Code Annotated section 40-26-105(b) provides that coram nobis relief is available in criminal cases as follows:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

A writ of error coram nobis in criminal cases is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). The writ comes "with stringent statutory requirements." *Clardy v. State*, 691 S.W.3d 390, 400 (Tenn. 2024). "In keeping with the extraordinary nature of the writ, the petition must be pled with specificity." *Id*. The writ "may be granted only when the coram nobis petition is in writing, describes 'with particularity' the substance of the alleged newly discovered evidence, and demonstrates that it qualifies as newly discovered evidence." *Nunley*, 552 S.W.3d at 816 (citation omitted)). "A writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. 40-26-105(a).

## A. Statute of Limitations

A petition for a writ of coram nobis must be filed within one year of the judgment becoming final in the trial court. *Mixon*, 983 S.W.2d at 670. A judgment becomes final "thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010), *overruled on other ground by Nunley*, 552 S.W.3d at 828. "Timeliness under the statute of limitations . . . is not an affirmative defense; rather, it is one of the essential elements of a coram nobis claim." *Clardy*, 691 S.W.3d at 401.

If the coram nobis petition does not show on its face that it has been filed within the one-year statute of limitations, the petition must set forth with particularity facts demonstrating that the prisoner is entitled to equitable tolling of the statute of limitations:

> To be entitled to equitable tolling, a prisoner must demonstrate with particularity in the petition: (1) that the ground or grounds upon which the prisoner is seeking relief are "later arising" grounds, that is grounds that arose after the point in time when the applicable statute of limitations normally would have started to run; [and] (2) that, based on the facts of the case, the strict application of the statute of limitations would effectively deny the prisoner a reasonable opportunity to present his or her claims . . . . A prisoner is not entitled to equitable tolling to pursue a patently non-meritorious ground for relief.

Id. at 829.

As the Tennessee Supreme Court has stated recently, "new evidence of actual innocence" must be "clear and convincing." *Clardy*, 691 S.W.3d at 407-408. The supreme court explained the clear and convincing standard as:

To meet the clear and convincing standard, the trial court must determine that the evidence offered . . . is not vague and uncertain. The clear and convincing evidence standard is more exacting than preponderance of the evidence but less exacting than beyond a reasonable doubt, and it requires that there [be] no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.

*Id*. at 408 (quoting *State v. Jones*, 450 S.W.3d 866, 893 (Tenn. 2014)). Thus, new evidence of actual innocence, if credited, should leave the trial court with no "serious or substantial doubt that the petitioner is actually innocent." *Id*. If a petition for a writ of error coram nobis "fails to *show on its face* either that it has been timely filed in accordance with Tennessee Code section 27-7-103 or specific facts showing why the petitioner is entitled to equitable tolling of the statute of limitations, the trial court is within its discretion to summarily dismiss it." *Nunley*, 552 S.W.3d at 829 (emphasis added).

In this case, Petitioner's judgments of conviction were entered on January 19, 2016. The statute of limitation is calculated from the date of finality in the trial court. " If a post-trial motion is timely filed, the judgment becomes final upon entry of an order disposing of the post-trial motion." *Mixon*, 983 S.W.2d at 670. The order denying Petitioner's motion for new trial was entered on February 9, 2016. The Petition was filed on February 7, 2024, nearly eight years after the judgments became final. The Coram Nobis Petition failed to show on its face that it was filed within the statute of limitations and was therefore subject to "summary dismissal," "without discovery or an evidentiary hearing," unless the facts supporting the tolling of the statute of limitations appeared on the face of the Petition. *Nunley*, 552 S.W.3d at 806. As we discuss further below, the Coram Nobis Petition does set forth facts demonstrating that Petitioner is entitled to equitable tolling of the statute of limitations.

*B. DCS records in Exhibit AP*

Petitioner claims that the victim's DCS records attached to the Petition as Exhibit AP are newly discovered evidence. The trial court found that

[b]ecause the Petitioner averred to possession of records from 2008 through early 2012 in his motion for production of records in the trial of this matter, and because the trial court fully litigated matters related to DCS records from March 2012 through current, this [c]ourt finds that the [Coram Nobis P]etition, on its face, fails to demonstrate that the DCS records are newly discovered evidence outside the record that have not been previously litigated.

- 9 -

This court stated in its opinion on direct appeal that Petitioner claimed in a pretrial motion that because he "had possession of the victim's DCS records from 2008 until early 2012, he had 'a good faith basis to believe that there would be additional statements in the records from March 2012 to current that would be material to [his] defense.'" *Keel*, 2017 WL 111312, at *3.

We have examined Exhibit AP, which consists of DCS records from June 29, 2011, to July 27, 2011. Both the trial court and this court have previously determined that Petitioner had these records at the time of trial. Petitioner has failed to show the DCS records in Exhibit AP were newly discovered evidence. Additionally, the records, even if they were newly discovered, would not "clearly and convincingly" show that Petitioner is actually innocent of the underlying crime and are not sufficient to justify equitable tolling of the statute of limitations. *Clardy*, 691 S.W.3d at 394-95.

## C. Alleged <u>Brady</u> violation

Petitioner alleged that the State committed a *Brady* violation by withholding the records in Exhibit AP. Petitioner made substantially the same claim in his direct appeal. This court stated:

> [t]he trial court conducted an *in camera* review of the records and determined that they contained "no exculpatory or material information." Our review of those same records persuades us that the trial court reached the correct conclusion. Because the records contained no information that would likely have changed the outcome of [Petitioner]'s trial, no *Brady* violation occurred[.]

*Keel*, 2017 WL 111312, at *3.

Petitioner is not entitled to equitable tolling based upon this claim. Moreover, we note that our supreme court has held that a post-conviction proceeding, rather than an error coram nobis proceeding based on newly discovered evidence, is the "appropriate procedural mechanism" to seek relief for a *Brady* violation. *Nunley*, 552 S.W.3d at 819. As stated above, because Petitioner failed to comply with the application requirement of Tennessee Code Annotated section 40-30-117(c), we lack jurisdiction to consider this claim in the context of post-conviction relief.

## D. Alleged Statement by Victim's Uncle

Petitioner claims that the victim's uncle recently told his prior counsel that he knows Petitioner is innocent because his mother and the victim accused the uncle of raping the

victim. That statement, even if true, does not "clearly and convincingly" show that Petitioner is actually innocent of the underlying crime and is not sufficient to justify equitable tolling of the statute of limitations. *Clardy*, 691 S.W.3d at 394-95.

*E. Challenge to Subject Matter Jurisdiction*

Petitioner claimed that the trial court did not have subject matter jurisdiction because he lived in Wilson County, not Davidson County, when the rapes occurred. He claimed that the 2014 and 2015 Nashville Electric System records for Apartments A and B of 3008 Hillside Road, Nashville, showed that he was not guilty. The records were available at the time of the trial and are not newly discovered evidence. The records also do not show that Petitioner is actually innocent of the underlying crime and are not sufficient to justify equitable tolling of the statute of limitations. *Id*.

**CONCLUSION**

We lack jurisdiction to consider the trial court's dismissal of the Motion to Reopen and dismiss the appeal in this regard. Moreover, relative to the coram nobis proceedings, the Coram Nobis Petition was not timely filed, and Petitioner is not entitled to equitable tolling of the statute of limitations. Therefore, the trial court did not abuse its discretion in summarily dismissing the Coram Nobis Petition. We affirm the judgment of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE